UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

LUIS LICEA, an individual, and JOHN :    Civil Action No.:
PANARESE, an individual, :
 :
 :
                   Plaintiffs, :    COMPLAINT FOR VIOLATIONS OF THE
 :    AMERICANS WITH DISABILITIES ACT
    vs. :    OF 1990 AND NEW YORK STATE HUMAN
 :    RIGHTS LAW
 :
CONSENSUS CLOUD SOLUTIONS, INC., :
and J2 CLOUD SERVICES, LLC :
                  Defendants. :
 :
———————————————————— x

Plaintiffs Luis Licea and John Panarese ("Plaintiffs") bring this action on an individual basis for declaratory relief, injunctive relief and compensatory damages—including statutory and punitive damages—against defendants named herein, and allege based upon the personal knowledge of Plaintiffs, the investigation of counsel, and upon information and belief, as follows:

## NATURE OF THE ACTION

1.      As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent). According to 2021 polling date, 93 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at *9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

2.      According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2] Thus, depriving blind persons of equal access to commercial websites on the internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited Mar. 25, 2022). Indeed, 99 percent of adults between the ages of 18-29 use the Internet, and 98 percent of adults between the ages of 30-49 use the Internet. *Id.*

[2] In 2018, an estimated 7.6 million Americans reported having a visual disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1 (last visited Mar. 25, 2022). The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2018 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data. The estimate is based on a sample of 3,140,203 persons who participated in the 2018 ACS.

antithetical to the very purpose that motivated Congress to enact the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.*, more than three decades ago, as well as the enactment of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* "'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.'" *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75, 121 S. Ct. 1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))). "Congress found that 'physical or mental disabilities in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination.'" *Del-Orden*, 2017 WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden*). "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" *PGA Tour*, 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50 (1990), U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332). To remedy these ills, "Congress provided [a] broad mandate" in the ADA to affect the statute's "sweeping purpose." *Id.* "In a society in which business is increasingly conducted online, excluding businesses that sell services through the Internet from the ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges, and advantages ***available indiscriminately to other members of the general public***'". *National Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto Wholesaler's Ass'n*, 37 F.3d 12, 20 (1st Cir. 1994)).

3.        Plaintiffs are visually-impaired and legally blind persons[3] who brings this civil rights action against defendants Consensus Cloud Solutions, Inc. and J2 Cloud Services, LLC (collectively, "Defendant") for its failure to design, construct, maintain, and operate its website to be fully accessible to—and independently usable by—Plaintiffs.

4.        In August 2022, Plaintiff Licea browsed and attempted to transact business on Defendant's website, investor.consensus.com ("website" or "Defendant's website") and encountered active barriers. The main reason Plaintiff visited the website was to, *inter alia*, investigate potential investment in Defendant and to learn regarding its products, goods, and/or services. The website sells/offers cloud technology services and related products for purchase. The website had the following accessibility issues, among other things:

      (a)    Unlabeled graphics on the homepage.

      (b)    Inaccessible tabs, graphics and buttons throughout the website.

5.        In October 2022, Plaintiff Panarese browsed and attempted to transact business on Defendant's website, investor.consensus.com ("website" or "Defendant's website") and encountered active barriers. The main reason Plaintiff visited the website was to, *inter alia*, investigate potential investment in Defendant and to learn regarding its products, goods, and/or services. The website sells/offers cloud technology services and related products for purchase. The website had the following accessibility issues, among other things:

      (a)    Lack of tags to explain the slides on the homepage.

      (b)    Mislabeled or unclear labeling for links on the homepage.

      (c)    Lack of tagging for elements on the homepage.

---

[3] Plaintiffs use the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness; namely, a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

4

6.      The accessibility issues Plaintiffs experienced are still found on Defendant's website as of the date of the filing of this complaint.  Plaintiffs still intend to purchase certain goods and/or services from Defendant's website in the future, but currently cannot.

7.      Defendant and its website violate Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, as the website is not equally accessible to blind and visually-impaired consumers.

8.      Plaintiffs bring this action against Defendant seeking, *inter alia*, a preliminary and permanent injunction, other declaratory relief, statutory damages, actual and punitive damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and expenses.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

10.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff Panarese's NYSHRL claims.

11.     Defendant is subject to personal jurisdiction in this District.  Defendant operates and distributes its products and/or services throughout the United States, including to consumers and others in this District and thus should be subject to its violations of the ADA and the NYSHRL in this District

12.     This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2), and (c) because: (i) Defendant's unlawful course of conduct occurred in large part in this District and throughout the State of New York, and Plaintiff Panarese attempted to utilize the website in this State.

**PARTIES**

**Plaintiffs**

14.     Plaintiff Luis Licea is a resident of the State of California.  Plaintiff Licea is a blind, visually- impaired, handicapped person and a member of a protected class of individuals as defined under 42 U.S.C. § 12102(1)-(2)—and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

15.     Plaintiff John Panarese is a resident of Hauppauge, New York.  Plaintiff Panarese is a blind, visually- impaired, handicapped person and a member of a protected class of individuals as defined under 42 U.S.C. § 12102(1)-(2)—and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*—and as defined under the NYSHRL.

16.     While Plaintiffs genuinely want to avail themselves of Defendant's goods and services as offered on Defendant's Website, Plaintiffs have a dual motivation: they are also "testers," which one federal court has defined to be "individuals with disabilities who visit places of public accommodation to determine their compliance with Title III [of the ADA]." *Harty v. Burlington Coat Factory of Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011).   Indeed, it is widely accepted that "testers" such as Plaintiffs advance important public interests and should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).  Plaintiffs have filed multiple lawsuits against various operators of commercial websites under the California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51 *et seq.* as part of their advocacy work on behalf of the civil rights of visually-impaired persons. Plaintiffs intend to continue to engage in such advocacy work into the foreseeable future to ensure that Defendant's commercial Website and others are fully and equally enjoyable to and usable by visually-impaired persons, including themselves.

**Defendant**

17.    Plaintiff is informed and believes, and based thereon alleges, that Defendant Consensus Cloud Solutions, Inc. is a Corporation with its principal place of business located in Los Angeles, California, and that Defendant J2 Cloud Services, LLC, is a Delaware limited liability company with its principal place of business located in Los Angeles, California.  These two entities are referred to collectively as "Defendant" in this Complaint.  Defendant conducts business in New York through its website, which is a place of public accommodation as defined under 42 U.S.C. § 12181(7).

## SUBSTANTIVE ALLEGATIONS

**The visually-impaired use screen-readers to access the Internet.**

18.    In 2017, the Centers for Disease Control ("CDC") estimated that the blind population in the United States reached approximately 1.7 million.  The American Foundation for the Blind's website states that the 2019 American Community Survey (conducted by the U.S. Census Bureau) identified an estimated 388,524 New Yorkers with vision difficulty.

19.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.  In today's tech-savvy world, blind and visually-impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen. This technology is known as screen-reading software.

20.    Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, goods and services contained thereon.  As defined by the American Federation for the Blind, a refreshable

7

Braille display used in conjunction with a computer can provide a blind person access to information on the computer screen by electronically raising and lowering different combinations of pins on internal cells. These raised pins correspond to, and adapt, as the user moves their cursor over the text on the computer screen.

**A company's website must accommodate the use of screen readers**

21.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

22.     The international website standards organization, the World Wide Web Consortium, known universally as W3C, has published an updated version (version 2.1) of the Web Content Accessibility Guidelines ("WCAG"). WCAG 2.1 is a set of well-established guidelines promulgated to ensure that websites are accessible to blind and visually-impaired people. Non-compliant websites usually contain numerous common access barriers that prevent the blind and visually-impaired from enjoying the Internet in the same way sighted individuals do.

**Defendant's website discriminates against the visually-impaired by containing access barriers**

23.     Defendant is an online retail company that owns and operates a website offering products that Defendant delivers to New York and across the country. Defendant offers its website so that, *inter alia*, the general public can transact business on it. The goods and services offered by Defendant's website include, but are not limited to: cloud services technology services and related products.

24.     It is Defendant's policy and practice to deny Plaintiffs access to its website, and to specifically deny the goods and services offered to the general public. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiffs have been—and currently are—denied equal access to the website and the goods and/or services offered thereon.

25.   Plaintiffs are visually-impaired and/or legally blind.  Plaintiff Licea uses the JAWS 22 screen- reader to access websites on the Internet.  During Plaintiff Licea's visits to Defendant's website, the last occurring in August 2022, Plaintiff Licea encountered multiple access barriers that denied Plaintiff full and equal access to the goods and/or services offered to (and made available for) the general public.  These access barriers were the reason that Plaintiff Licea was denied the full enjoyment of the goods and/or services offered on the website.

26.   The website had the following accessibility issues, among other things:

(a)   Unlabeled graphics on the homepage.

(b)   Inaccessible tabs, graphics and buttons throughout the website.

27.   Plaintiff Licea was highly interested in purchasing the products offered by Defendant.  Plaintiff remains hopeful that the accessibility barriers will be cured expeditiously, as Plaintiff intends to return to the website in order to transact business there as soon as the accessibility barriers are cured.

28.   Plaintiff Panarese uses the Mac Book Pro with the latest MacOS operating systems with VoiceOver screen- reader to access websites on the Internet.  During Plaintiff Panarese's visits to Defendant's website, the last occurring in October 2022, Plaintiff Panarese encountered multiple access barriers that denied Plaintiff full and equal access to the goods and/or services offered to (and made available for) the general public.  These access barriers were the reason that Plaintiff Panarese was denied the full enjoyment of the goods and/or services offered on the website.

29.   The website had the following accessibility issues, among other things:

(a)   Lack of tags to explain the slides on the homepage.

(b)   Mislabeled or unclear labeling for links on the homepage.

(c)   Lack of tagging for elements on the homepage.

30.    Plaintiff Panarese was highly interested in purchasing the products offered by Defendant.  Plaintiff remains hopeful that the accessibility barriers will be cured expeditiously, as Plaintiff intends to return to the website in order to transact business there as soon as the accessibility barriers are cured.

**Defendant must remove the website's accessibility barriers**

31.    The access barriers Plaintiffs encountered have caused a denial of Plaintiffs' full and equal access in the past, and now deter Plaintiffs on a regular basis from visiting the website, presently and in the future.  These access barriers have deterred Plaintiffs from learning about the various products sold to sighted individuals because Plaintiffs were unable to determine and or purchase items from its website, among other things.  If the website were equally accessible to all, Plaintiffs could independently navigate the website and complete a desired transaction as sighted individuals do.

32.    Plaintiffs have actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.  Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiffs equal access to the website, Plaintiffs allege that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a)    constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiffs;

(b)    failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiffs; and

(c)    failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers (a protected class), including Plaintiffs.

10

33.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein. Since Defendant's website is not equally accessible—and because Defendant lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible—it must retain a qualified consultant acceptable to Plaintiffs to assist Defendant to comply with WCAG 2.1 guidelines for its website. Defendant must cooperate with the agreed upon consultant to:

(a)     train its employees and agents who develop the website on accessibility compliance under the WCAG 2.1 guidelines;

(b)     regularly check the accessibility of the website under the WCAG 2.1 guidelines;

(c)     regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's website complies under the WCAG 2.1 guidelines; and

(d)     develop an accessibility policy (clearly posted on its website(s)) with contact information for users to report accessibility-related problems.

34.     If the website were accessible, Plaintiffs would be able to independently view service items, and/or shop for goods via the website. Defendant has, upon information and belief, invested substantial sums in developing and maintaining its website and has generated significant revenue thereon. The revenues procured by Defendant far exceed the associated cost of making the website equally accessible to visually-impaired consumers.

## COUNT I

**Against Defendant for Violations of the ADA, 42 U.S.C. §§ 12101 *et seq.*, on behalf of Plaintiffs**

35.     Plaintiffs incorporate by reference the preceding allegations as though fully set forth herein.

36.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides:

No individual shall be discriminated against on the basis of disability in the full and equal

11

enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

37.     Defendant's website is a place of public accommodation within the definition of 42 U.S.C. § 12181(7). The website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

38.     Under 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in – or benefit from – the products, services, facilities, privileges, advantages, or accommodations of an entity.

39.     Under 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

40.     Under 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii), unlawful discrimination also includes, among other things:

> "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities…and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded..."

41.     Plaintiffs are members of a protected class of persons who has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A).

42.     Furthermore, Plaintiffs have been denied full and equal access to the website, have not been provided goods and/or services that are provided to other patrons who are not disabled, and have been provided goods and/or services that are inferior to the services provided to non-disabled

persons.

43.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

## COUNT II

**Against Defendant for Violations of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, on behalf of Plaintiff Panarese**

44.     Plaintiff Panarese incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

45.     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof…."

46.     Defendant's Website is a public accommodation, service, privilege and/or advantage of Defendant within the meaning of the NYSHRL.

47.     Defendant is subject to NYSHRL because it owns and operates a public accommodation, its Website, which is generally accessible and available in the state of New York. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

48.     Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to its Website, causing its Website to be completely inaccessible to the blind and visually-impaired.  This accessibility denies blind and visually-impaired patrons full and equal access to the facilities and services that Defendant makes available to the non-disabled public.

49.     Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures,

13

when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden."

50.    Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

51.    As set forth above, the international website standards organization, W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.0").  WCAG 2.1 are well-established, industry standard guidelines for ensuring websites are accessible to blind and visually-impaired people.  These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible.  These guidelines recommend several basic components for making websites accessible including, but not limited to, adding invisible alternative text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.  By contrast, incorporating these basic components to make its Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

52.    Defendant's actions constitute willful intentional discrimination against Plaintiff Panarese on the basis of a disability in violation of the NYSHRL, N.Y. Exec. Law § 296(2) in that Defendant: has constructed and maintained a Website that is inaccessible to Plaintiff Panarese with

knowledge of the discrimination; and/or constructed and maintained a Website that is sufficiently intuitive and/or obvious that it is inaccessible to Plaintiff Panarese; and/or failed to take actions to correct these access barriers in the face of substantial harm and discrimination to Plaintiff Panarese.

53.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct.  These violations are ongoing.

54.    Defendant discriminates, and will continue in the future to discriminate, against Plaintiff Panarese on the basis of disability in the full and equal enjoyment of its products, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website under § 296(2) *et seq.* and/or its implementing regulations.  Unless this Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff Panarese will continue to suffer irreparable harm.

55.    Defendant's actions were and are in violation of the New York State Human Rights Law and, therefore, Plaintiff Panarese invokes his right to injunctive relief to remedy the discrimination.

56.    Plaintiff Panarese is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for each and every offense.

57.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

58.    Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Panarese prays for judgment as set forth below.

## COUNT III

**Against Defendant for Declaratory Relief, on behalf of Plaintiffs**

59.    Plaintiffs incorporate by reference the preceding allegations as though fully set forth herein.

60.    Defendant's website contains access barriers denying blind customers full and equal

15

access to the products and/or services.  The website violates 42 U.S.C. §§ 12182, *et seq.*, and N.Y. Exec. Law § 290 *et seq* , which prohibit discrimination against the blind.  A judicial declaration is, therefore, necessary and appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand a judgment:

(a)      awarding Plaintiffs statutory money damages, actual damages and punitive damages, including pre-judgment and post-judgment interest;

(b)      granting a preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website fully comply with the requirements set forth in the ADA and NYSHRL;

(c)      providing a declaration that Defendant owns, maintains and/or operates its website in a manner that discriminates against the blind and visually-impaired;

(d)      awarding attorneys' fees and costs, and other relief; and

(e)      awarding such other relief as this Court deems just and proper.

**CLARK LAW FIRM, PC**

By: _____
**GERALD H. CLARK, ESQ.**

Gerald H. Clark, Esq.
811 Sixteenth Avenue
Belmar, New Jersey 07719
Phone: (732) 443-0333
Fax (732) 894-9647

Pacific Trial Attorneys
4100 Newport Place, Suite 800
Newport Beach, California 92660

Attorneys for Plaintiffs

Dated: *12-8-22*

Consensus New York ADA Website Complaint (REB 10.11.22).docx

16